

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2015 SEP -4 PM 2: 58

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| VONGSAVAT SAYASANE | § | |
| | § | |
| v. | § | 2:12-CV-171 |
| | § | |
| UNITED STATES OF AMERICA | § | |

## REPORT AND RECOMMENDATION TO DENY
## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Defendant VONGSAVAT SAYASANE has filed with this Court a Motion to Vacate, Set

Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255.  For the reasons set out below, the

undersigned United States Magistrate Judge is of the opinion defendant is not entitled to relief and

recommends the motion to vacate, set aside, or correct sentence be DENIED.


### I.
### BACKGROUND

On October 20, 2009, defendant was charged by indictment with conspiracy to commit a drug

offense and for possession with intent to distribute methamphetamine.  *United States v. Sayasane*,

No. 2:09-CR-72(08).  A jury found defendant guilty of both counts, and he was subsequently

sentenced to 262 months imprisonment on each conviction, such sentences to run concurrently.

Defendant's convictions were affirmed on appeal.  *United States v. Sayasane*, No. 10-10397, 2011

WL 989846 (5th Cir. Apr. 13, 2011).  The United States Supreme Court denied defendant's petition

for a writ of certiorari.  *Sayasane v. United States*, 132 S.Ct. 214, 181 L.Ed.2d 116 (2011).  The

instant 28 U.S.C. § 2255 motion followed.

II.

## DEFENDANT'S ALLEGATIONS

In support of his contention that his conviction and sentence were imposed in violation of the Constitution or laws of the United States, defendant presents the following grounds for relief:

1.  Defendant received ineffective assistance of counsel because his trial attorney

    a.  interfered with defendant's right to testify;
    b.  failed to call a favorable witness for the defense;
    c.  failed to renew his objection to the sufficiency of the evidence at the end of the trial;
    d.  failed to object to the conscious avoidance instruction in the jury charge; and
    e.  failed to file a motion to suppress.

2.  Defendant's conviction was obtained, and his sentence was imposed, in violation of his rights under the Due Process Clause.

III.

## MERITS

### A.  Ineffective Assistance of Counsel Claims

Defendant first claims his right to effective assistance of counsel was violated by trial counsel's performance. In *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-part test for analyzing ineffective assistance of counsel claims. The *Strickland* test requires a prisoner to demonstrate defense counsel's performance was both deficient and prejudicial. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

An attorney's performance is considered deficient if the attorney made errors so serious he or she was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment to the United States Constitution. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2064. That is, counsel's

performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession. A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S. Ct. at 2065.

In the context of deficient attorney performance during the course of a jury trial, a defendant establishes prejudice by showing "(1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *see Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

### 1. Interference with Defendant's Right to Testify

Defendant's first claim of ineffective assistance of counsel is that his attorney interfered with his right to testify at trial. In an affidavit submitted with his 28 U.S.C. § 2255 motion, defendant avers,

> During trial preparation, and trial I clearly told my lawyer, Maxwell Peck, that I wanted to testify on my own behalf, and tell the jury that I was not involved in any drug conspiracy. To prepare for testimony, Peck had me meet with translators John Johnson and Paul Litana. I expected to testify at trial but Peck did not allow me the opportunity.

It is well established that a criminal defendant has a constitutional right to take the stand and testify in his defense. *See Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001). The defendant alone, and not his attorney, may waive this right, and the defendant's waiver of this right must be knowing and voluntary. *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir.1997).

The record before the Court on this issue contains only the short statement of defendant in his affidavit, as quoted above. No affidavit from defendant's trial counsel offering the attorney's

version of what defendant's wishes were at the time of trial has been submitted.  Accepting defendant's affidavit as true, it appears defendant informed his attorney of his desire to testify, that the attorney prepared the defendant to testify, but that the attorney waived that right.  Even though this may have been sound trial strategy considering defendant's prior conviction for aggravated sexual assault of a child younger than age fourteen, which would have been available for use against defendant had defendant taken the stand, *see* Fed. R. Crim. P. 609, the rule of this circuit is that "The decision of whether to testify belongs to the defendant and hiss lawyer cannot waive it over his objection." *United States v. Mullins*, 315 F.3d 449, 454 (5th Cir. 2002); *see Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) (holding it is counsel's duty to weigh the benefits of a defendant's proposed testimony against the risks of the defendant testifying and to advise his client accordingly).

An evidentiary hearing to obtain the testimony of defendant's trial attorney regarding why defendant did not take the stand is not necessary because, even taking defendant's affidavit as true, defendant fails to establish prejudice.  Defendant avers he wanted to testify and to tell the jury he did not participate in any drug conspiracy.  Defendant was convicted of two different crimes, conspiracy to commit a drug offense and possession with intent to distribute.  He received 262 months incarceration on each conviction, such sentences to run concurrently.  In his affidavit, defendant does not indicate how or if he would have refuted the possession charges.  He only addresses the conspiracy charge.  Because he would have received 262 months incarceration on the possession charge, even if the jury would have believed his plea of innocence as to the conspiracy charge, petitioner has failed to demonstrate prejudice. *See United States v. Bass*, 310 F.3d 321, 330 (5th Cir. 2002) (holding "As for *Strickland*'s second prong, [the defendant] was prejudiced by this deficient performance, albeit minimally.  As [defendant] is serving all of his sentences concurrently, the

sentencer did not impose a harsher prison term as a result of the [contested] conviction."); *see also Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Moreover, defendant has failed to show there is a reasonable probability that, had he testified, the jury would have had a reasonable doubt concerning his guilt on either count and that any errors were so serious they deprived the defendant of a fair trial. *See Mullins*, 315 F.3d at 456. The government presented testimony from a Drug Enforcement Agency (DEA) agent about the movements of the semi-truck driven by defendant, and registered in defendant's name, which were monitored via a GPS tracker placed on the truck by law enforcement. (Transcript, Doc 256 [hereinafter Tr.] 26). Another DEA agent testified that on August 26, 2009, he observed defendant in his semi-truck parked in a Flying J convenience store parking lot in Amarillo, Texas. (Tr. 77). At the Flying J, a person driving a passenger vehicle met with defendant in the cab of his semi-truck for approximately twenty minutes before the stranger in the passenger car left empty-handed. (Tr. 77). Defendant, a resident of Amarillo, spent the night in the truck on the convenience store parking lot. The next morning, he detached the trailer from the truck tractor, and drove the tractor to a rural residence. At the residence, defendant met with a Raymundo Haro. (Tr. 84). Mr. Haro got into the semi-truck tractor with defendant and stayed for several minutes. (Tr. 50, 84-85). Mr. Haro exited the truck with a large white bag. (Tr. 85). Police officers who were surveilling defendant observed the bag, which was moved around, and eventually pulled over the person driving the vehicle where

the bag had finally been placed.  (Tr. 61, 88-89).  Inside the bag was 4.628 kilograms of methamphetamine. (Tr. 61, 126). One week after this event, defendant was stopped in central Texas for speeding.  A search of defendant's truck revealed a large, recently added secret compartment above the driver's seat. (Tr. 161, 167). The compartment was empty, but a canine sniffing the truck alerted to the top of the cab of the truck, indicating drugs had been recently located in that area. (Tr. 208).

The Government also presented the testimony of one of defendant's co-conspirators, Robert Martinez.  Mr. Martinez testified his role in the conspiracy was to store and cut methamphetamine, making it distributable at a greater profit. (Tr. 136-137). According to Mr. Martinez, on the night of August 26, 2009, when DEA agents observed defendant parked at the Flying J convenience store, Mr. Haro called Mr. Martinez. (Tr. 150). Mr. Haro indicated he was at the Flying J with defendant and wanted to know if Mr. Martinez was able to receive the "load of drugs" that defendant had brought in.[1] (Tr. 150-151). Mr. Martinez declined to accept the shipment that evening but indicated he was free to take possession of it the following day. (Tr. 151). The Government offered into evidence Mr. Haro's phone records to support Mr. Martinez's account of Mr. Haro contacting Mr. Martinez the night of August 26, 2009. (Tr. 152)(Gvt's Ex. 35).

Mr. Martinez also testified that on a prior occasion, in the Spring of 2009, another co-

---

[1] The following was Mr. Martinez's testimony regarding the events on the night of August 26, 2009.  Mr. Martinez had earlier testified that "The Chino's brother" was defendant's nickname. (Tr. 134-135).

Q. Reymundo Haro calls you on your cell phone, correct?
A. Yes, ma'am.
Q. And he tells you who is at Flying J?
A. The Chino's brother.
Q. And what does Haro want from you, if anything?
A. He wants to know if I want to actually receive this load of drugs that he has.
Q. That the Chino's brother has?
A. Yes, ma'am.

(Tr. 150-51).

conspirator instructed Mr. Martinez to pick up a Jetta vehicle loaded with methamphetamine from

defendant's brother's house. (Tr. 146). While Mr. Martinez was waiting at defendant's brother's

house, defendant drove up in the Jetta. (Tr. 147). Mr. Martinez took possession of the Jetta and

drove it back to his own house, where he located the methamphetamine in a secret compartment in

the car. (Tr. 147).

Throughout the testimony by the DEA agents, defendant's trial attorney elicited testimony

that no drugs were ever found in defendant's truck or on defendant himself. (Tr. 35). He established

that any time he was stopped, he was completely cooperative with the police. (Tr. 169, 198, 202).

He elicited testimony that defendant's fingerprints were not found on the white bag of

methamphetamine seized by the police. (Tr. 70). On cross-examination of Mr. Martinez,

defendant's trial attorney established that Mr. Martinez and defendant did not have ongoing direct

contact, and that Mr. Martinez had only spoken to defendant once, when Mr. Martinez took

possession of the Jetta vehicle loaded with drugs and driven by defendant. (Tr. 157-58). In both his

opening and closing remarks, trial counsel advanced the defense that defendant was nothing more

than a truck driver who was present at the wrong place and at the wrong time. (Tr. 23, 261). He

emphasized the lack of evidence directly linking defendant to a conspiracy or to possession of

methamphetamine. (Tr. 261). Defendant's statement in this §2255 proceeding that he wanted to,

"tell the jury that [he] was not involved in any drug conspiracy," is insufficient to establish a

reasonable probability that his testimony, given the clear strategy of his trial counsel minimizing

defendant's involvement, and the testimony of the Government's witnesses, would have created

reasonable doubt concerning his guilt. *See Mullins*, 315 F.3d at 456. Trial counsel's statements and

cross examinations conveyed the same defensive theory defendant now says he would have testified

about, *i.e.* that he was not involved in the conspiracy.  There has been no showing that testimony

from the defendant that he was not involved in the conspiracy would have altered the result of the

trial.  Because defendant has failed to show the result of the trial would have been different if he had

testified, he has failed to establish any deficient performance by his trial attorney on this issue was

prejudicial.  *See id.*; *Sayre*, 238 F.3d at 635.

### 2.  Failure to Call a Witness

In his second claim of ineffective assistance of counsel, defendant asserts his trial attorney's

performance was constitutionally infirm when he failed to call Mr. Steven Lim, who was defendant's

supervisor, to testify.  In support of this contention, defendant submits the affidavit of Mr. Lim, in

which Mr. Lim states,

1. I can attest to the fact that Vongsavat Sayasane worked for me as a truck driver from at least July, [sic] 2009 until at least September 2009.
2. I directed Mr. Sayasane's activities.  I told him where to go, when to go there, and what deliveries to make and to whom.
3. I inspected the tractor and trailer driven by Mr. Sayasane and did not see anything unusual about it.  I did not smell anything unusual.
   . . .
6. I was ready, willing and able to testify for Mr. Sayasane if the lawyer had asked me to do so, but I was never asked.

"[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial

evidence is a matter of trial strategy and because allegations of what a witness would have testified

are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978).  Because the

presentation of witness testimony is largely strategic, it is within trial counsel's domain.  *Alexander*

*v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).  To establish deficient performance for failure to call

a witness, a claimant must overcome the strong presumption that counsel's decision to not call a

particular witness was a strategic one.  *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984).  To

establish prejudice from any deficient performance, the claimant must establish a " 'reasonable probability' that the uncalled witness would have made [a] difference to the result." *Alexander*, 775 F.2d at 603.

In this case, defendant has not overcome the presumption that counsel's decision was strategic and he has failed to demonstrate either deficient performance or prejudice. The focus of the Government's case against defendant was on defendant's actions within the city of Amarillo, *i.e.* the transaction where he gave the white bag to Mr. Haro, which bag was later seized from Mr. Haro and found to contain several kilograms of methamphetamine, and the transaction between the defendant and Mr. Martinez where defendant delivered to Mr. Martinez a vehicle with methamphetamine hidden inside. While defendant's movements out of state were discussed, the Government never presented any evidence regarding who told defendant where to drive. A reasonable attorney could have concluded, as a matter of strategy, that there was no need to call a witness who would not be able to offer testimony in contradiction of any Government witness and who could not provide exculpatory testimony to counter the Government's strongest evidence. Because the decision not to call Mr. Lim is presumed to have been strategic, defendant has not established his trial attorney performed deficiently. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (establishing strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief); *Murray*, 736 F.2d at 282.

Moreover, even if defendant had established deficient performance, he has not shown the required prejudice. Mr. Lim indicates he would have testified defendant was driving to locations at Mr. Lim's direction. Mr. Lim's statement fails to account for the evidence that the truck defendant was driving was registered to defendant. (Tr. 26). Mr. Lim could not have realistically testified that

he had total control over defendant and the truck registered to defendant and even if he did so testify, defendant was observed by DEA agents delivering the bag containing several kilograms of methamphetamine to Mr. Haro.  Nothing in Mr. Lim's testimony would have explained away defendant having possessed several kilograms of methamphetamine.  Moreover, Mr. Martinez, through his testimony, linked defendant to delivering a car containing methamphetamine to Mr. Martinez as part of the conspiracy in May or June 2009, which was before defendant started working for Mr. Lim.  To the extent the testimony from Mr. Martinez demonstrated defendant's participation in a drug conspiracy, Mr. Lim had no favorable testimony to offer.  Even if trial counsel had called Mr. Lim, and he offered the testimony set out in his affidavit and that testimony was wholly accepted by the jury, there is no reasonable probability such testimony would have made a difference to the jury's ultimate determination of guilt.  *See Alexander*, 775 F.2d at 603.  Defendant has failed to establish ineffective assistance of counsel based upon counsel's failure to call Mr. Lim as a witness.

### 3.  Failure to Renew Objection

In his third claim of ineffective assistance of counsel, defendant contends counsel should have renewed his objection to the sufficiency of the evidence.  His failure to do so, defendant contends, resulted in a more demanding standard on appellate review than if the objection had been made and error properly preserved.  At trial, when the Government rested, trial counsel moved for an instructed verdict of acquittal on both counts and the court denied the motion.  (Tr. 210).  At the close of all evidence, counsel did not re-urge the motion for an instructed verdict.  (Tr. 225).  On appeal, defendant challenged the sufficiency of the evidence.  The Fifth Circuit stated,

> Sayasane moved for a judgment of acquittal at the close of the Government's case-in-chief, but failed to renew the motion at the close of all evidence.  Therefore, our review is limited to whether there has been a "manifest miscarriage of justice," which occurs when the record is devoid of evidence of guilt or if the evidence on a

key element of the offense is so tenuous that a conviction would shock the conscience.

*United States v. Sayasane*, 419 Fed. Appx. 482, 2011 WL 989846, at *1 (5th Cir. Mar. 22, 2011).

Rule 29(a) of the Federal Rules of Criminal Procedure provides, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." If the court denies the motion and defendant takes issue with that denial on appeal, the appellate court will evaluate "whether, viewing the evidence presented and all inferences reasonably drawn therefrom in the light most favorable to the government, any rational trier of fact properly could have found each element of the crime beyond a reasonable doubt." *United States v. Ruiz*, 860 F.2d 615, 617 (5th Cir. 1988). If, however, a defendant moves for a judgment of acquittal at the close of the Government's evidence but fails to renew the motion at the conclusion of all evidence, he waives any objection to the initial denial of the motion. *Id.* In that situation, the appellate court is limited to the "much stricter standard" of "whether there was a manifest miscarriage of justice." *Id.*

While defendant is correct that counsel's failure to re-urge the motion for acquittal at the conclusion of all evidence resulted in a more strict standard on appellate review, he has failed to show counsel's failure to object was of a constitutional magnitude. First, defendant has failed to show counsel was deficient. Counsel moved for judgment of acquittal at the close of the Government's case-in-chief. That motion was denied. While counsel did present some evidence as part of his defense and in an attempt to impeach one of the Government's many witnesses, none of the evidence put on by the defense substantially contradicted any of the Government's witnesses. The Government had presented evidence from Mr. Martinez, his supporting phone records, and the

testimony of a DEA agent that defendant met another co-conspirator (Mr. Haro) in the parking lot of a convenience store with a load of drugs that defendant had brought from out-of-state and that defendant intended to deliver to Mr. Haro who would then deliver them to Mr. Martinez for processing. (Tr. 77, 150-51, 154-53). When defendant effectuated delivery of the drugs to Mr. Haro the next day, which corresponded with Mr. Martinez's testimony, several DEA agents were watching. (Tr. 50, 84-85). Evidence of recent drug presence in an added secret compartment in defendant's truck a week later, a truck which by that time had been registered to defendant for fifty-eight days, further supported the Government's evidence. (Tr. 118,167) Also, the officer testified he could tell the compartment was recently added because the putty around it was not all the way dry and there were cans of paint in the truck matching the color of the compartment. (Tr. 200). This evidence established the elements of a drug conspiracy under 21 U.S.C. § 846. *See United States v. Quiroz-Hernandez*, 48 F.3d 858, 866 (5th Cir. 1995) (detailing "[t]o establish a drug conspiracy under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt (1) an agreement to violate the narcotics laws, (2) that each alleged conspirator knew of the agreement and intended to join the conspiracy, and (3) that each alleged conspirator did voluntarily participate."). Because the evidence offered during the government's case-in-chief did not change to any significant degree, defendant was not entitled to a judgment of acquittal before beginning his case-in-chief, and he remained unentitled to such a judgment after the presentation of his case-in-chief. Counsel was not deficient for not re-urging an unsuccessful motion when there was no contravening evidence to call the earlier ruling into doubt. *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir.1995) (noting an attorney is not deficient for failing to raise a frivolous issue).

Even if counsel were deficient, defendant has not shown any prejudice. In order to establish

prejudice on this claim, defendant, "...must show that it is a reasonable probability that had counsel moved for a judgment of acquittal, the motion would have been granted on the basis of insufficiency of evidence." *United States v. Rosalez-Orozco*, 8 F.3d 198, 199 (5th Cir. 1993). While a direct challenge to sufficiency of the evidence is not cognizable in a 28 U.S.C. § 2255 proceeding, *Forrester v. United States*, 456 F.2d 905, 907 (5th Cir. 1972) ("This contention questions only the sufficiency of the evidence to sustain [defendant's] conviction, and is not a contention cognizable on a collateral motion under § 2255"), the Court in addressing the prejudice element of this ineffective assistance of counsel claim "...must evaluate the sufficiency of the evidence as if counsel had moved for judgment of acquittal at the close of the evidence." *Rosalez-Orozco*, 8 F.3d at 199. In defendant's case, the Fifth Circuit, even though it was reviewing defendant's claim under a more strict standard, nevertheless held "Sayasane's concerted actions with other known members of the conspiracy rose to a level of more than just mere association or mere presence in an unsavory atmosphere. The record contains *ample direct and circumstantial evidence* of Sayasane's involvement in the drug conspiracy." *Sayasane*, 419 Fed. Appx. at 483, 2011 WL 989846 at *1 (internal citation omitted) (emphasis added). As detailed above, the Government presented evidence meeting all of the elements of defendant's participation in a drug conspiracy, and a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *See Rosalez-Orozco*, 8 F.3d at 199.

Regarding the charge of drug possession, "[i]n order to obtain a conviction for possession with intent to distribute, the government must prove three elements: (1) knowing (2) possession of [a drug] (3) with intent to distribute it." *United States v. Lindell*, 881 F.2d 1313, 1322 (5th Cir. 1989). Defendant contends the Government failed to prove the "knowing" element. The

Government's evidence showed that the day before the drug exchange observed by DEA agents, Mr.

Haro called Mr. Martinez indicating defendant had called Mr. Haro from Flagstaff, Arizona, and

defendant was acting "worried" and seemed "scared about what was going on." (Tr. 149). The

tracking records of the GPS device placed on defendant's truck indicated defendant was traveling

through Arizona (having departed from California) on the morning of August 26, 2009. (Tr. Gvt's

Ex. 35).[2]   When defendant arrived in Amarillo, Texas later that day in a truck that had been

registered in his name for almost two months, Mr. Haro contacted Mr. Martinez indicating he was

at the convenience store with defendant Sayasane, and with a load of drugs. (Tr. at 150 - 151). The

following day, and consistent with Mr. Martinez's testimony that he could receive the drug shipment

on that day, DEA agents observed defendant give to Mr. Haro a white bag. (Tr. 85, 97). Mr. Haro

was then followed by DEA agents, who upon searching Mr. Haro's vehicle discovered several

kilograms of methamphetamine in the white bag. (Tr. 57, 61). A reasonable jury could have inferred

from this evidence that defendant had actual and knowing possession of the methamphetamine.

Moreover, the Court in its charge instructed the jury on the theory of co-conspirator liability under

the *Pinkerton* doctrine. (Tr. 239-40)[3]; *see Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180,

90 L.Ed. 1489 (1946). Accordingly, once the Government provided evidence defendant was part

---

[2] While no witness ever testified that the GPS tracker showed defendant was in Arizona on August 26, 2009, Government's Exhibit 35, which was admitted during trial, indicated such.

[3] Specifically, the Court instructed the jury,
   A conspirator is responsible for offenses committed by another conspirator if the conspirator was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of, or as a foreseeable consequence of, the conspiracy."
   Therefore, if you have first found the Defendant guilty of the conspiracy charged in Count 1 and if you find beyond a reasonable doubt that during the time the Defendant was a member of the conspiracy another conspirator committed the offense in Count 6 in furtherance of or as a foreseeable consequence of that conspiracy, then you may find the Defendant guilty of Count 6, even though the Defendant may not have participated in any of the acts which constitute the offense described in Count 6.

of a conspiracy to distribute illegal drugs, which it did as detailed above, the fact that one of his co-conspirators (Mr. Haro) was caught with 4.628 kilograms of methamphetamine was sufficient to meet all of the elements of the substantive offense of possession. *See Pinkerton*, 328 U.S. at 646-47, 66 S.Ct. at 1183-84. Even though it operated under a strict standard of review, the Fifth Circuit spoke directly to this contention:

> Sayasane argues that the evidence was legally insufficient to establish that he knowingly possessed the meth. Under *Pinkerton v. United States*, 328 U.S. 640, 645–46, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), a defendant may be held liable for the reasonably foreseeable acts committed by co-conspirators in furtherance of the conspiracy, and no additional evidence is necessary to sustain a conviction on a resulting substantive count where the Government has provided sufficient evidence to establish that the defendant was a knowing member of the conspiracy. *United States v. Jimenez*, 509 F.3d 682, 692 n. 9 (5th Cir. 2007). Because the Government provided ample direct and circumstantial evidence that Sayasane knowingly participated in the conspiracy, and there was no dispute that Haro possessed 4628 grams of meth with the intent to distribute it in furtherance of the conspiracy, the Government did not need to provide additional evidence that Sayasane knowingly possessed the meth. *See id.*

*Sayasane*, 419 Fed. Appx. at 484, 2011 WL 989846 at *2. Thus, the Government provided evidence in support of every element required for the drug possession charge, and a rational jury could have found the essential elements of the offense of drug possession beyond a reasonable doubt. *See Preuneda-Gonzalez*, 953 F.2d 190, 193 (5th Cir. 1992). There is no reasonable probability that the Court would have granted a motion for judgment of acquittal even if counsel had re-urged the motion at the close of all evidence. *See Rosalez-Orozco*, 8 F.3d at 199. Consequently, defendant has failed to meet the prejudice prong of *Strickland. See id.*

### 4. Failure to Object to Conscious Avoidance Instruction

In his fourth contention of ineffective assistance of counsel, defendant submits his trial attorney rendered ineffective assistance of counsel when he failed to object to the conscious

avoidance instruction in the Court's charge. Defendant contends a person cannot join a conspiracy by conscious avoidance, and the inclusion of that instruction in the jury charge was error to which trial counsel should have objected.[4]

To establish deficient performance violative of the Sixth Amendment, a person alleging error based upon his attorney's failure to object to a jury instruction, "...must demonstrate not just that the alleged jury instruction was in error, and not just that his lawyer's failure to object to it was in error, but that such a failure was so serious as to 'fall[] below an objective standard of reasonableness and thereby prejudice[] the defense.'" *Thacker v. Dretke*, 396 F.3d 607, 614 (5th Cir. 2005) (quoting *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)).

Defendant has failed to establish deficient conduct because he has not shown the challenged jury instruction was erroneous. *See id.* "Deliberate-ignorance instructions are appropriate when the evidence raises two inferences: (1) that the 'defendant was subjectively aware of a high probability of the existence of the illegal conduct' and, (2) that the 'defendant purposely contrived to avoid learning of the illegal conduct.'" *United States v. Cisneros*, 414 Fed. Appx. 696, 702 (5th Cir. 2011) (quoting *United States v. Ojebode*, 957 F.2d 1218, 1229 (5th Cir. 1992) (citation omitted), *abrogated in part on other grounds by United States v. Oreira*, 29 F.3d 185, 189 (5th Cir. 1994)). The Fifth Circuit, in reviewing defendant's claims direct appeal, has already ruled on this issue. Citing the two-pronged standard for determining when a deliberate-ignorance instruction is appropriate, the

---

[4] In its charge to the jury, the Court in discussing the conspiracy charge, issued the following instruction: Now, for purposes of these instructions, an act is done knowingly if done voluntarily and intentionally and not because of a mistake or accident or other innocent reason. You may find the Defendant had knowledge of a fact if you found that the Defendant deliberately closed his eyes to what otherwise would have been obvious to him. While knowledge on the part of the Defendant cannot be established merely by demonstrating that the Defendant was negligent, careless, or foolish, knowledge can be inferred if the Defendant deliberately blinded himself to the existence of a fact. (Tr. at 238).

Fifth Circuit held "[i]n light of Sayasane's continued protestations of ignorance in the face of such suspicious circumstances, it was appropriate for the district court to instruct the jury on deliberate indifference." *Sayasane*, 419 Fed. Appx. at 484. Consequently, because defendant is unable to now demonstrate "the alleged jury instruction was in error," he cannot establish that his attorney was deficient in failing to object to it. *See Thacker*, 396 F.3d at 614; *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

Moreover, defendant has not shown prejudice. The jury charge was not erroneous, and there is not a reasonable probability that had counsel objected to it the Court would have sustained the objection. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. As the Fifth Circuit held, "even if providing the jury instruction was clear error, Sayasane's substantial rights were not affected because the Government provided sufficient evidence that he had actual knowledge of the conspiracy." *Sayasane*, 419 Fed. Appx. at 484; *See Gray v. Lynn*, 6 F.3d 265, 269 (5th Cir. 1993) (establishing a prisoner can establish prejudice for failing to object to the jury charge by showing there is a reasonable probability that the jury would have a reasonable doubt respecting defendant's guilt if the challenged portion of the jury instruction had been excluded from the charge). Even if the Court had excluded the instruction, there is no reasonable probability that the result of the trial would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. To the extent defendant complains of the heightened standard applied to him on appeal because of his attorney's failure to object to the charge, defendant has not demonstrated the Fifth Circuit would have held the trial court abused its discretion in denying any objection to the charge. If counsel had objected to the instruction, thereby preserving the challenge on appeal, the Fifth Circuit would have applied an

abuse of discretion standard of review instead of the plain error standard. *See United States v. Fuchs*, 467 F.3d 889, 900 (5th Cir. 2006). Under the abuse of discretion standard, the Fifth Circuit considers whether the challenged jury instruction is both legally accurate and factually supportable. *Id.* (quoting *United States v. Mendoza-Medina*, 346 F.3d 121, 132 (5th Cir. 2003). In defendant's case, although it applied the plain error standard of review, the Fifth Circuit indicated not only that inclusion of the instruction was not erroneous but also that it was factually supportable, and it ultimately held, "Sayasane cannot demonstrate that the district court committed error, plain or otherwise." Defendant has failed to establish prejudice on this claim.

### 5. Failure to File a Motion to Suppress

In his final contention of ineffective assistance of counsel, defendant avers counsel was ineffective for failing to file a motion to suppress evidence of the GPS tracker placed on his truck. At defendant's trial, a DEA agent testified that he placed a GPS tracker on defendant's truck in July of 2009 and that, in early August of 2009 (on a trip not directly associated with any drug charges) the DEA tracked the truck going from Amarillo to Fort Worth to Dallas to Gainsville and back to Amarillo. (Tr. 30). He also testified the tracker showed that on August 26, 2009, the truck came into Amarillo. (Tr. 32). Although there was never any testimony as to whether the tracker indicated where the truck was coming from, the Government was able to admit the logs of the GPS tracker during the relevant time period, which reflected that the week before the drug exchange defendant drove from Amarillo, Texas to California, where he drove to various locations for three days before turning around and heading back toward Amarillo. (Tr. Gvt's Ex. 35). A DEA agent testified he placed the GPS tracker on defendant's truck while the truck was parked at a commercial location, Premier Body Shop, which was defendant's brother's mechanic's shop. (Tr. 27). While there was

no development on the subject, it appears as though the tracking device was placed, without a warrant, after the truck had, "come to [the] attention" of the DEA via a confidential informant. (Tr. 34, 92).

The GPS tracker was placed on the truck in July 2009. Defendant was arraigned November 24, 2009, and faced trial on January 20, 2010. In January of 2012, the Supreme Court issued its opinion in *United States v. Jones*, ---- U.S. ----, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012). In *Jones*, law enforcement installed a GPS device on a vehicle while the vehicle was parked in a public parking lot and then monitored the vehicle's movements via the tracker for twenty-eight days. *Id.* at 947. The Supreme Court held "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.' " *Id.* at 949. Defendant relies upon the *Jones* decision to support his contention trial counsel should have moved to suppress the GPS tracking records.

Defendant meets neither *Strickland* prong. In evaluating the quality of trial counsel's performance, the reviewing court is to disregard any lessons hindsight would offer. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). At the time defendant Sayasane's trial counsel could have presented a motion to suppress, which would have been in December 2009, the Supreme Court was more than two years away from the *Jones* decision. Defendant contends in his reply brief trial counsel should have known to pursue a motion to suppress because *Jones* simply "applies well-settled law to new facts." This argument, however, overlooks the Supreme Court's extensive efforts in distinguishing the facts in *Jones* from

those in other cases that might have dictated a different result. Defendant's argument is further belied by the Fifth Circuit's opinion in *United States v. Hernandez*, 647 F.3d 216 (5th Cir. 2011). In *Hernandez*, the court relied upon Supreme Court precedent (precedent extensively discussed in *Jones*) to conclude the government's use of a hidden GPS tracker was *not* an unconstitutional warrantless search. *Hernandez*, 647 F.3d at 220 (citing *United States v. Knotts*, 460 U.S. 276, 285, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983)). In reaching this determination, the Fifth Circuit pointed out that the only circuit to have passed upon the issue and found use of a GPS tracker constituted a search was the D.C. Circuit, the circuit from which the *Jones* case originated. *Id.* In short, there was a circuit split on the issue at the time of the *Jones* opinion.

Moreover, the caselaw at the time a motion to suppress the GPS tracker in defendant Sayasane's case could have been filed indicated such a motion would not have been successful. While the Fifth Circuit did not issue its opinion in *Hernandez* until 2011, the district court had issued its denial of Hernandez's motion to suppress in September 2009, two months before defendant Sayasane could have filed a motion to suppress. *See United States v. Hernandez*, 3:08-CR-268-B, 2009 WL 3028575 (N.D. Tex. Sept. 21, 2009). In the same time period that a motion to suppress in defendant Sayasane's case would have been filed, a sister district court from the Northern District of Texas had issued a ruling contrary to the position defendant claims counsel should have pursued. The Court finds no deficiency in defendant Sayasane's trial counsel failing to pursue a motion to suppress that, at the time, appeared to be either foreclosed or very unlikely to have succeeded under the then-recent district caselaw.[5]

---

[5] Defendant avers deficient performance of trial counsel is established because "[t]here is no evidence that the failure to file a motion to suppress was 'strategic, conscious and informed'" and because "[t]here is no indication that Petitioner's lawyer gave any thought to the concept that installation of a GPS device without a warrant might be unconstitutional." ("Memorandum of Law Supporting Motion to Vacate, Set Aside, or Correct Sentence Pursuant to

Defendant additionally fails to show prejudice. When a defendant contends counsel failed to litigate a Fourth Amendment claim in violation of his Sixth Amendment rights, he must also demonstrate prejudice by showing "there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986). In defendant Sayasane's case, as detailed above, the GPS tracking records were not the most damaging evidence against defendant. In light of the direct observations of the DEA agents and the testimony of a co-conspirator, the records of the GPS tracker were of minimal importance. Moreover, the sum total of defendant's prejudice analysis under this contention, that exclusion of the GPS tracker evidence would have left the Government, "with even less evidence of Petitioner's alleged involvement in the conspiracy, [sic] and the substantive offense," falls short of meeting his burden to "affirmatively prove" prejudice. *See DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994). Defendant has failed to prove the verdict would have been any different had the evidence from the GPS tracker been excluded. *See Kimmelman*, 477 U.S. at 375, 106 S.Ct. at 2583. "Even assuming that a Fourth Amendment violation occurred and that suppression would otherwise be appropriate, the evidence should not be suppressed in this case because the officers acted in reasonable reliance on circuit precedent. *Davis v. United States*, —— U.S. ——, 131 S.Ct. 2419, 2423–24, 180 L.Ed.2d 285 (2011). In December 2009, it was objectively reasonable for agents operating within the Fifth Circuit to believe that warrantless GPS tracking was permissible under circuit precedent. In *United States v. Michael*, 645 F.2d 252, 257 (5th Cir.1981) (en banc), this court held that 'reasonable suspicion is adequate to support warrantless beeper

---

28 U.S.C. § 2255," doc. 1-1, pg. 18 (Aug. 13, 2012)). Defendant's contention overlooks the presumptions governing this Court's analysis. Under direction of the Supreme Court, this Court *presumes* counsel acted with competence. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Defendant cannot successfully allege, without any factual support or analysis, that counsel acted without any strategy.

installation' on a suspect's vehicle parked in a public place." In *United States v. Andres*, 703 F.3d 828, 834-35 (5th Cir.) *cert. denied*, —— U.S. —— , 133 S. Ct. 2814, 186 L. Ed. 2d 873 (2013) the court held that even if a Fourth Amendment violation occurred and that suppression would otherwise be appropriate, the evidence would not be suppressed if the officers relied on existing circuit precedent which justified the conduct. Defendant Sayasane's contention of ineffective assistance of counsel is without merit.

### B.   Due Process Rights Claim

In his second ground of error, defendant contends his conviction was obtained, and his sentence was imposed, in violation of his rights under the Due Process Clause. Defendant's presentation and analysis of this contention is as follows: "In the present case, every inference of guilt was offset by an equally compelling inference of innocence. As such, the elements of the crimes were not proven beyond a reasonable doubt. *United States v. Reyes-Ortega*, 140 F.3d 540 (5th Cir. 1998)."

The Court is unable to locate the case cited by defendant. It has, however, located the case defendant appears to reference, *United States v. Ortega Reyna*, 148 F.3d 540 (5th Cir. 1998). In that case, the Fifth Circuit on direct appeal upheld the defendant's challenge to the sufficiency of the evidence supporting his conviction. In reaching its determination, the Appeals Court held the evidence against defendant equally indicated guilt as much as innocence, and as such was insufficient for the jury to have found defendant's guilt beyond a reasonable doubt. *Id.* at 542-47. The case was expressly abrogated by the Fifth Circuit in *United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir. 2014)(en banc).

Regardless of the validity of the case upon which defendant's argument is based, the

argument is, at its core, one challenging the sufficiency of the evidence to support his convictions. The Fifth Circuit has already passed upon the sufficiency of the evidence in both of the convictions and has found the contentions meritless. *See Sayasane*, 419 Fed. Appx. at 483-84. Because the Fifth Circuit has already passed upon this argument, the argument is procedurally barred in this Court. *See United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions."). Even if this matter were not procedurally barred, a challenge to the sufficiency of the evidence "is not a contention cognizable on a collateral motion under § 2255." *Forrester v. United States*, 456 F.2d 905, 907 (5th Cir. 1972). Defendant's second claim fails.

IV.
RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge that the Motion to Vacate, Set Aside, or Correct Sentence filed by defendant VONGSAVAT SAYASANE be DENIED.

V.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _4th_ day of September 2015.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

HAB55/SAYASANE-171.DNY                    page 23 of 24

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(c), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds,* 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin,* 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).